Tilghman C. J.
George Baker, the plaintiff in the Court of Common Pleas, claimed under a warrant to Joseph Sellers dated 7th September 1796, for one hundred acres of land, including his improvement. On the 3d March 1797, Sellers conveyed his right to Andrew Dixon, who on the 10th April 1805, conveyed to George Baker, to whom a patent was issued on the 8th August 1806.
Jacob Bixler, the defendant, entered on the land, and made a settlement prior to the issuing of Baker’s patent, and he defended himself under his possession and title by settlement. It became a question, on the trial, whether Joseph Sellers had made a settlement and resided on the land, at the time of obtaining his warrant. With regard to this fact, evidence was given on both sides, and the opinion of the court was prayed, whether the plaintiff was entitled to ■^recover without proof of such settlement and residence. The court delivered tlieir opinion, “ that the warrant, survey and patent given in evidence by the plaintiff, were sufficient to vest in him a good and legal title, without the proof of any actual residence on the ground, at the time of taking out the said warrant.” To this opinion the counsel for the defendant excepted, and the two associate judges of the Common Pleas, who differed from the president, and overruled him on this point, sealed a bill of exceptions.
This warrant was issued under the act of 22d September 1794, by which it is enacted, that no application shall be received in the land office, for any land within the commonwealth, “ except for such lands whereon a settlement has been or shall be made, grain raised, and a person or persons residing thereon.” The commonwealth was supposed to have issued warrants before this, for nearly as much land as remained vacant, and it was determined to leave the residue for that class of people, who would settle and make their residence on the land. In our acts of assembly, and in common parlance, there is a difference between an improvement and a settlement. An improvement may be made by clearing land, and cultivating it without residing on it. A settlement *200 requires an actual residence. Settlers in this sense of the word have always been favored, and deservedly, because they increase the wealth, the strength, and the population of the country, in a greater degree than any other class of men who take up land. The idea of the legislature, with regard to the meaning of a settlement, is precisely defined in the act of 80th December 1786. “It is an actual, personal, resident settlement, with a manifest intention of making it a place of abode, and the means of supporting a family.” I can see no reason for supposing that any other kind of settlement was intended by the act under which this warrant issued. But it is contended, that supposing this to be the true construction of the act, the patent is conclusive evidence, that such settlement was made, because the officers of the commonwealth would not have issued it, without proof of the settlement. This argument is not correct. I agree that the patent is strong presumptive evidence of a settlement, and if the court had said so to the jury, all would have been right. But I cannot allow that the patent is conclusive ^evidence. The officers of the land office are public agents, entrusted with the power of granting lands in the name of the commonwealth, not absolutely, but under the conditions prescribed by law, of which conditions every man is bound to take notice. When Baker purchased the right to Sellers’ warrant, he was bound to take notice of the nature of that warrant, and the condition which ought to have been complied with before it issued. He was bound also to know, that if the warrant was obtained by fraud and imposition on the commonwealth’s officers, and that fraud should be discovered, the board of property had a right to refuse a patent. It is true, a patent was afterwards issued; but previous to it, Bixler had entered with a view of making a settlement, and he thereby acquired a right, in case the warrant of Sellers was illegally issued. It is unnecessary to give an opinion how the law would be, if, after the issuing of the patent, an alienation had been made to a bona fide purchaser without notice of the original fraud, and then Bixler had entered on the land and made a settlement. The case is that he entered before the patent was issued, and being in possession Baker was bound to take notice of it. If Bixler acquired a right by his entry and settlement previous to the patent, the board of property could not divest him of it by issuing a patent. The Court of Common Pleas therefore ought to have directed the jury, that in case they should be of opinion there was a settlement attended with residence, at the time of obtaining the warrant, the title of the plaintiff was good; and they *201 erred in saying that the plaintiff’s title was good without proof of actual residence. My opinion is that the judgment should be reversed, and a venire facias de novo awarded.
Yeates J.
The warrant under which Baker the plaintiff below claimed, was dated on the 7th September 1796, founded on an improvement made on the lands in question in the preceding year. Bixler came into possession in the spring of 1805, the land being then and for several years before unoccupied, and the patent issued to Baker on the 6th August 1806. The opinion of the majority of the Court of Common Pleas was declared, that the plaintiff below had a good and legal title to the land in question, without proof of *any actual resident settlement thereon, and have sealed a bill of exceptions.
The counsel for the defendant in error have contended, that by the third section of the act of April 1st, 1784, the certificate from two justices of the peace of the proper county, is only to specify upon an application for lands whether the same be improved or not; and if improved, how long since the said improvement was made, that interest may be charged accordingly :—that the officers of the land office, having accepted the certificate signed by the justices of the peace in the present instance, and acted thereon, and a patent having afterwards issued on those proceedings, the same is conclusive proof of their regularity;—and that no one can object to the want of an actual settlement except the commonwealth.
To this it has been correctly answered, that the first section of the act of 22d September 1794 alters the former law, by directing that no application shall be received in the land office, “ except for such lands whereon a settlement has been or thereafter shall be made, grain raised, and a person or persons residing thereon.” The judgment of the two judges manifestly impugned this act, when it was held, that proof of actual settlement on the ground at the time of taking out the warrant was unnecessary. The land officers had no authority to dispense with the provisions of a positive law, and whether their error sprang from ignorance, inadvertence or misinformation, it cannot conclude the state, nor can the patent conclude the commonwealth, when founded on a false statement of facts. Every citizen interested in the land thus acquired, may contest the validity of the grant. This point was fully considered and decided on by this Court in the feigned issue tried at Sunbury in November 1802, between *202 the attorney general and grantees under the act of 3d April 1792.
But it has been further objected, that if there was an illegality in taking out the warrant, it was purged by the subsequent conveyances from Joseph Sellers the warrantee to Andrew Dixon in March 1797, and from Dixon to Baker the defendant in error in April 1805. It is not precisely ascertained whether Bixler came into possession of the premises before or after the date of Baker’s deed. If the land *was occupied by Bixler previous to the purchase by Baker, it was implied notice of the adverse right. At all events, the former settled on the lands nearly sixteen months before the latter obtained his patent. If the transfer of the land to a third person would legalize an act interdicted by the provisions of the legislature, it would amount to a repeal of that section of the law which I have mentioned. Every man is bound to know and conform to the laws of the country. A purchaser takes the title with all its imperfections, and a prudent man will look to the right he is contracting for, and secure himself by proper covenants. The rule is caveat emptor, and it is matter of daily experience, that patents are impeached in the hands of alienees.
I have no hesitation in saying, that the opinion delivered by the two judges was erroneous, and naturally led the jury into mistake; and that judgment should be reversed, and a venire facias de novo awarded.
Brackenrid&e J.
By the act of the 3d of April 1792, in consideration that the most valuable lands had been appropriated, and those which remained, were so high at the prices fixed by law, as to discourage actual settlers from purchasing, it is provided, section first, that all vacant lands, excepting always such as have been previously settled, shall be reduced to the sum of fifty shillings for every hundred acres.
By the act of September 1794, “ No application shall be received for any lands, except such whereon a settlement has been made, or shall be made, grain raised, and a person or persons residing thereon.” This reduction in the price of lands, though intended for actual settlers, yet other purchasers availed themselves of the occasion, and took out warrants at this price. Frauds were practised in getting warrants that had been taken out, returned unexecuted, and new warrants taken out at the reduced price, transferring the purchase money of the old to the new, as by law had been provided might be done in the case of unexecuted war *203 rants, by act of assembly of March the 29th 1792, and March 6th 1793. With a view to this fraud, came the act of 1794, but as aforesaid. But if you *toss out fraud with a pitch-fork, as the poet says, it will come back upon you.

--Expelías furea, lamen ipsa recurret.

In the nature of the case, proof must be made to the office that this condition precedent had been fulfilled before an application was receivable. The law did not provide for the kind of proof, nor with what solemnity it should be brought forward; hence, deception of the office. Had the law provided in what way proof should be made, its being made in that way, would have been conclusive in favor of the applicant. But it is left at his own risk. It is at his peril that the condition has been complied with, and he is at the mercy of making out proof of this when at any time it shall be questioned. Doubtless there must be some evidence to the office; but I cannot undertake to say, nor am I much disposed to say, after the frauds that have been practised on the office, and the little vigilance to resist them until the time of Governor M’Kean’s administration, that any acquiescence of the office ought to conclude any thing.
It is contended that in the ease of a bona fide transfer such proof is not necessary. But the warrant being originally void if obtained on a fraudulent application, cannot be rendered valid by becoming the property of an honest man.
It may be asked what shall be the nature of that improvement which the act requires. The description in the act of assembly of 1786 has been contended for. In speaking of that act I shall premise a word or two. What should constitute an improvement was the question before the revolution; not whether an improvement shoidd constitute an equity. It was difficult to say what inception, or continuing, should amount to a settlement. A small matter hath sometimes' carried a verdict against the office right; and even against a later, hut more substantial improvement. The tarrying a night, the marking a tree, the finding a spring, had been set up. The girdling a tree, that is, taking a circular slip of bark from the body which tended to kill it, and destroyed shade, had been considered as a legitimate commencement of improvement. The deadening in this manner, as the phrase was, of an acre or more of ground, had pretty fair pretensions to a tract. The planting peach or cherry stones, or *204 sow^n» *apple seeds, had been given in evidence, and considered as giving a priority. Rye or wheat sown, from whence some stocks were proved to have grown up, was called raising grain.
"Where an improvement was made out, the difficulty was to ascertain the extent on each side. The usage gave 300 acres; but how to be laid out, a square, an oblong, or what irregular figure, was the difficulty. The way in which the settler announced himself to claim, or in which he might be considered as reasonably claiming, taking into view the water, the ridge, bottom, or low ground, was a guide for the consideration of the jury. Lines by consent amongst the settlers were held sacred. Hence the terms consentable lines, agreed lines. What was reasonable on all these heads, after a good deal of extravagance, had come to be pretty well understood. The common sense of the people, and their own convenience regulated this.

--Utilitas justi prope mater et cequi.

But the extravagance in many cases had thrown disrepute upon improvement claims, and excited or rather had increased an opposition to them. The holders of office rights had an interest in opposing them. Nevertheless they were considered so protected by the usage, that on the opening of the land office, 1st July 1784, no provision would seem to have been thought necessary to protect them by express words; though it would seem to be implied in the act, that settlers alone could take out warrants for their own improvements. By section third, every applicant for land shall produce to the secretary of the land office a particular description of the lands applied for, with a certificate from two justices of the peace for the proper county, specifying whether the lands be improved or not; and if improved, how long since the improvement was made, that interest may be charged accordingly. It cannot be supposed that any but the settler could be contemplated as bound to give an account of his improvement, and on application for a warrant to pay interest; and it was so understood, until at a Nisi Prius Court in 1785, evidence of title by improvement was overruled, and an entry on land without a previous office right, was treated as a trespass. "-^is produced a legislative interposition,and brought up the act of 1786. It was an act on the spur of the occasion, and the terms in the description of what shall constitute a settlement, were multiplied to obviate fears from the extravagance which had prevailed at an early period. *205 But tbe description in fact amounts to nothing. “An actual personal resident settlement, with an intention to make it a place of abode, fit for the habitation of man, and continued from time to time, &c.” Actual—there must be an act. Thinking of the land will not do, nor looking at it. The act must be personal, not by property upon it. There must be residence. Walking over will not do. Continued from time to time. From one hour to another might satisfy this. Fit for the habitation of man. There must be something in which a man can lodge. With an intention to make it a place of abode. The intention must be collected from circumstances. So that after all, that kind of settlement which had been sanctioned by the courts and juries, and had come to be pretty generally understood, and substantially comprehending these, must still be resorted to as what will bring an improvement within the custom.
The description in the present act has the circumstance of raising grain, which would seem to require something more than the bare inception of a settlement; for grain could not be raised under three months at least; and the meaning could not be any thing short, in the understanding of the people, of what might be reasonably considered the making a crop on a reasonable extent of cleared ground. A statute definition in this case, never can comprehend in terms what may be a compliance substantially with a condition; and as every improvement must be the result of a series of acts, it must be construed according to the usage, and be left to the due and attentive consideration of a court and jury. I do not take it, and for these very reasons, that it was intended to be within the province of the land office to judge of this conclusively. An adverse claim in this as in other eases, notwithstanding a warrant issued on an alleged improvement right, may still be traversed and defence made.
Judgment reversed.
[Cited in 2 S. & R. 66; 6 id. 140, 250; 10 id. 247; 2 R. 235; 1 W. 96; 5 id. 564; 3 Wh. 268; 7 Barr, 481; 1 Clark, 208; 6 H. 301; 7 id. 40; 10 Wr. 70; 9 S. 163 ; 27 id. 130.]